JANET BRANCH, Employee, Plaintiff v. CAROLINA SHOE COMPANY, Employer, N.C. INSURANCE GUARANTY ASSOCIATION (formerly RELIANCE INSURANCE COMPANY, Carrier), Statutory Insurer, Defendants

No. COA04-1097

(Filed 16 August 2005)

**1. Workers' Compensation— interlocutory order—reconsideration—notice**

The Industrial Commission was not precluded in a workers' compensation case from revisiting an earlier order which did not determine all of the issues between the parties; however, the parties should have had notice that an issue might be reached and should have had an opportunity to present pertinent evidence.

**2. Workers' Compensation— unauthorized treatment—physician's testimony—competent**

The fact that a physician is not authorized by the Commission means that the employer and carrier cannot be required to pay for treatment, but does not render the physician's evidence incompetent.

**3. Workers' Compensation— remand—law of the case**

Determinations about an injury which were not appealed by plaintiff became the law of the case and, although addressed by defendant in its brief on appeal, may not be revisited on a remand on other grounds.

Appeal by defendants from Opinion and Award entered 6 April 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 April 2005.

*Wayne W. Martin for plaintiff-appellee.*

*Orbock, Ruark & Dillard, PC, by Barbara E. Ruark, for defendants-appellees.*

GEER, Judge.

Defendants Carolina Shoe Company and N.C. Insurance Guaranty Association appeal from an opinion and award of the Industrial Commission, awarding plaintiff Janet Branch total disability compensation based on a change of condition under N.C. Gen. Stat. § 97-47 (2003). On appeal, defendants argue that the Full Commission was bound by its decision remanding the case for an evidentiary hearing

on specified issues and that the Commission, therefore, erred when its subsequent opinion and award went beyond those specified issues. Although we hold that the Full Commission was not limited by its earlier decision, it was obligated to give the parties notice and an opportunity to be heard prior to basing its decision on issues that the parties had no reason to believe would be addressed. We, therefore, reverse the Commission's decision and remand for further proceedings to allow the parties an adequate opportunity to present evidence on the question whether there was a change of condition under N.C. Gen. Stat. § 97-47.

### Facts

Sometime before March 1994, while working as a "utility person" for Carolina Shoe, Branch began to experience pain in her right foot.[1] After she was diagnosed as having a Morton's neuroma, defendants accepted that condition as a compensable occupational disease. Branch ultimately underwent two surgeries on her right foot.

On 26 September 1994, the parties entered into a Form 21 agreement for payment of temporary partial disability that was approved by the Commission on 11 October 1994. Throughout most of these proceedings, Branch continued to work part-time for Carolina Shoe, primarily in a position in the company's tag room where her duties included sorting papers and tags, hand stamping papers, and stapling papers.

Following her second surgery in 1995, Branch continued to experience pain in her right foot, and beginning in April 1996, Branch also began complaining about pain in her upper extremities. Her ongoing pain in her foot was diagnosed as reflex sympathetic dystrophy ("RSD"). Her doctors variously found no medical explanation for her upper extremity pain, found her upper extremities to be normal, or concluded that the upper extremity problems were the result of poor posture and deconditioning because of Branch's inactivity and lack of use of her right foot. From March 1995 through September 1997, in addressing Branch's conditions, her approved treating physicians each recommended that Branch increase her activity, including a gradual increase in her working hours until she was working eight hours a day. Branch did not comply with these recommen-

---

1. These facts are drawn from the findings of fact of the Full Commission in a 17 February 1999 opinion and award that neither party appealed. In the opinion and award that is the subject of this appeal, the Commission concluded that these findings are binding on the parties. That conclusion has not been challenged on appeal.

dations but rather worked between two to four hours per day, five days a week.

In addition to seeing her approved physicians, Branch consulted with Dr. Gary Poehling beginning in December 1996. Dr. Poehling has never been authorized by the insurer or the Commission as a treating physician. With respect to her right foot, he agreed with the diagnosis of RSD and recommended that Branch be as active as possible, but approved a modified work schedule. In May 1997, Dr. Poehling saw Branch for complaints of pain in her upper extremity. He recommended work restrictions of light duty, less than five pounds lifting, no repetitive use of the right extremity, and no vibrating tools. Dr. Poehling next saw Branch on 4 September 1997. He diagnosed complex regional pain syndrome in both the upper and lower right extremities. He recommended that she continue to work on light duty and that she increase her work time from four to six hours per day.

In an opinion and award filed 31 December 1997, following a hearing in February 1997, deputy commissioner W. Bain Jones, Jr. found that Branch's condition at that point was "the result of her failure to comply with the treatment recommendations of all of her physicians, by failing to increase her activities, including increasing the number of hours she daily works at her job." He concluded that "[p]laintiff has unjustifiably refused to return to work pursuant to her physicians' instructions; therefore her eligibility for wage loss compensation under the Act is suspended as of 22 May 1997."

On 9 January 1998, plaintiff appealed to the Full Commission. In an opinion and award filed 17 February 1999, the Commission made the following pertinent findings of fact:

29. Plaintiff's condition is the result of her failure to comply with the treatment recommendations of her physicians that she increase her level of activity, including increasing the number of daily hours she works at her job. The tag room position did not aggravate or contribute to her continuing complaints of pain, and she is physically able to perform the tasks of the job. The primary reason for her condition is inactivity and resulting deconditioning.

30. Plaintiff's upper extremity complaints are not medically substantiated and are not caused by the compensable foot injury. The tag room position did not cause plaintiff's upper extremity pain.

31. The physicians' findings of various points of maximum medical improvement in this case demonstrate how plaintiff's self-limitations on her physical activity have worsened her condition and prevented her recovery. These self-limitations were out of proportion to her pain and were unjustified. Plaintiff did not demonstrate a motivation to improve. She did not demonstrate a willingness to return to work full time in the tag room or in any other available light duty positions. Absent her self-imposed limitations, plaintiff likely would have improved and would have been able to return to work full time. Given plaintiff's noncompliance, it is unlikely that further medical intervention will improve her condition.

32. Plaintiff reached maximum medical improvement no later than 16 September 1997. She has a permanent impairment rating of 20% to her left foot.

Based on its findings, the Commission concluded that Branch had unjustifiably refused to comply with her physicians' recommendations that she increase her level of activity, including her work hours, in order to improve. It, therefore, suspended her eligibility for wage loss compensation as of 16 September 1997. The Commission also concluded that Branch was not entitled, for the same reasons, to payment for medical treatment after that date.

The Commission directed that "[i]n order to reinstate benefits, plaintiff must comply with the following work schedule: Plaintiff must begin working four hours a day regularly for a period of two weeks, then increase her daily work schedule by one hour each successive week until she reaches a regular schedule of eight hours per day." Neither party appealed from this opinion and award.

One month later, on 5 April 1999, Branch filed a Form 18 that alleged a "worsening in her pain syndrome from the work related injury." The nature and extent of this injury was reported to be "[c]omplex regional pain syndrome involving the predominantly right lower extremity as well as right upper extremity secondary to work related injury to the right lower extremity." Plaintiff claimed her disability started on 6 November 1997.

On 25 September 2000, deputy commissioner Richard B. Ford filed an order addressing two motions of plaintiff: (1) a motion to combine plaintiff's original claim (I.C. No. 453005) with her new claim (I.C. No. 921804) for purposes of hearing, and (2) a motion to

reopen I.C. No. 453005 for change of condition. The deputy found that Branch had not appealed from the prior opinion and award and had not complied with it, that the terms and conditions in I.C. No. 453005 were the law in the case, that there had been no change of condition with respect to plaintiff's right foot, and that I.C. No. 921804 sought recovery for an upper extremity injury occurring on 5 November 1997. He ordered that the 31 December 1997 opinion and award was still in full force and effect and that I.C. No. 921804 would be set for hearing. Plaintiff appealed this decision to the Full Commission on 5 October 2000.

In an opinion and award filed 20 March 2002, the Full Commission concluded first that "[p]laintiff is entitled to file a motion to modify the Commission's Award based on a change of condition under Section 97-47 and is entitled to present evidence relevant to this issue." After concluding that the findings of fact and conclusions of law in the 17 February 2000 opinion and award were final and could not be relitigated, the Commission observed that "this fact does not preclude plaintiff from asserting and presenting relevant evidence on a change of condition under Section 97-47."

The Commission then concluded that this case differed from the usual N.C. Gen. Stat. § 97-47 change of condition claim because of the Commission's prior findings that (1) plaintiff has self-imposed limitations and failed to comply with her physicians' treatment plan, (2) the benefits had been suspended, and (3) plaintiff's upper extremity pain syndrome, as argued in I.C. No. 453005, is not related to her compensable lower extremity injury. The Commission, therefore, concluded that evidence that plaintiff's condition had gotten worse would not "purge the prior finding that plaintiff failed to accept suitable employment and thereby is not entitled to benefits under Section 97-32. Therefore, mere evidence that plaintiff's condition has worsened is not relevant to the issues before the Commission."

The Commission then remanded to the deputy commissioner for a hearing on specified issues:

[T]he issues raised by plaintiff's Form 18 in I.C. No. 921804 and the motion for change of condition in I.C. No. 453005 are: (1) whether plaintiff has complied with her physician's treatment plan and reasonably sought employment sufficient to remove the Section 97-32 suspension of benefits; (2) whether plaintiff has sustained a compensable injury to her right upper extremity in I.C. No. 921804 that is different from the condi-

tion for which compensation was previously sought and denied in I.C. No. 435005; and if so, (3) what benefits, if any, is plaintiff entitled to receive.

On remand, a hearing took place before deputy commissioner Ronnie E. Rowell, and the parties took the depositions of Dr. Mark McManus, Dr. Gary Poehling, and Dr. Hans Hansen. Following the closing of the record, the deputy commissioner transferred the matter to the Full Commission.

The Full Commission entered its opinion and award on 6 April 2004. The Commission first observed that the medical depositions would support findings that plaintiff's complex regional pain syndrome migrated from her lower extremity to the upper extremity, that the tag room position exacerbated the upper extremity pain syndrome and that, as of December 1997, plaintiff was unable to work in any job due to the complex regional pain syndrome in her upper and lower extremities. The Commission then found (1) that plaintiff had presented no evidence that she had made any effort to seek employment or to comply with the 17 February 1999 opinion and award, (2) that plaintiff presented no evidence of a new onset of an occupational disease or new injury in I.C. No. 921804, and (3) that the issues concerning plaintiff's upper extremity condition and its relationship to her compensable right foot condition and the tag room job "have previously been litigated and ruled upon by the Full Commission. The Full Commission decisions on these issues were not appealed and therefore are final and binding on the parties."

The Commission then ruled that the only remaining issue was whether plaintiff had sustained a change of condition. The Commission acknowledged that its 20 March 2002 opinion and award had stated that "mere evidence that plaintiff's condition has worsened is not relevant to the issues before the Commission," but found that "the recently submitted uncontroverted medical evidence in the deposition testimony of Drs. Poehling, Hansen and McManus shows that plaintiff was not capable of work in any employment after December 18, 1997 due to the pain syndrome in both upper and lower extremities." The Commission added that "[t]here is no medical evidence in the record that since December 1997 plaintiff was capable of returning to work in any employment or that working would improve her condition."

Based on these findings, the Commission concluded that plaintiff's upper extremity condition was not compensable under either

I.C. No. 453005 or I.C. No. 921804. The Commission concluded, however, that as of 18 December 1997, plaintiff was no longer capable of work in any employment due to the combination of her compensable complex regional pain syndrome in her lower extremity and her non-compensable complex regional pain syndrome in her upper extremity. Because no medical evidence was presented to apportion the extent of disability between the compensable condition and the non-compensable condition, the Commission concluded that plaintiff was entitled to a resumption of total disability compensation after 18 December 1997 "and continuing until further Order of the Commission."

The Commission also concluded that plaintiff was entitled to authorized medical treatment related to the compensable right foot condition, but because Drs. Poehling, McManus, and Hansen were not authorized treating physicians, plaintiff was not entitled to payment by defendants of the care provided by those physicians. The Commission then directed that a Commission nurse be assigned to manage plaintiff's treatment, to assist the parties in the designation of an authorized treating physician, and to schedule a vocational assessment as recommended by Dr. Hansen.

Defendants filed a timely notice of appeal of the Full Commission's opinion and award. Plaintiff has not appealed any aspect of the opinion and award.

## Discussion

**[1]** Defendants argue on appeal that the Commission was precluded by its 20 March 2002 decision from concluding in its 6 April 2004 opinion and award that plaintiff had sustained a change of condition. We disagree.

"This Court has held that when the matter is 'appealed' to the full Commission pursuant to G.S. 97-85, it is the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties." *Vieregge v. N.C. State Univ.*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992). In appealing to the Full Commission, a plaintiff "is entitled to have the full Commission respond to the questions directly raised by [its] appeal." *Id.* at 639, 414 S.E.2d at 774.

Despite the Commission's responsibility to consider all the issues before it, "[t]he doctrine of *res judicata* precludes relitigation of final orders of the Full Commission and orders of a deputy commissioner

which have not been appealed to the Full Commission." *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 138, 502 S.E.2d 58, 61, *disc. review denied*, 349 N.C. 228, 515 S.E.2d 700 (1998). In *Bryant*, similarly to this case, the plaintiff did not appeal from a deputy commissioner's initial opinion and award suspending the plaintiff's compensation benefits until the plaintiff cooperated with reasonable vocational rehabilitation efforts. *Id.* at 136, 502 S.E.2d at 59. Subsequently, a deputy commissioner and, on appeal, the Full Commission found that the plaintiff was incapable of participating in a vocational rehabilitation program. *Id.* at 137, 502 S.E.2d at 60.

This Court, in reviewing the defendant's contention that the Commission's decision was barred by *res judicata*, held that "[t]he essential elements of *res judicata* are: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present suit; and (3) an identity of parties or their privies in both suits." *Id.* at 138, 502 S.E.2d at 61. The Court concluded that the doctrine of *res judicata* was not implicated in *Bryant* because "the Full Commission did not relitigate whether Plaintiff must comply with 'reasonable' vocational rehabilitation, but merely determined that Plaintiff was incapable of complying with the available vocational rehabilitation program." *Id.*

In this case, because the 20 March 2002 opinion and award did not conclusively determine the issues between the parties, but rather ordered further proceedings, it was an interlocutory order and not a final judgment on the merits. " '[A]n interlocutory order or decree is provisional or preliminary only. It does not determine the issues joined in the suit, but merely directs some further proceedings preparatory to the final decree.' " *Poore v. Swan Quarter Farms, Inc.*, 57 N.C. App. 97, 101, 290 S.E.2d 799, 802 (1982) (emphasis omitted) (quoting *Johnson v. Roberson*, 171 N.C. 194, 196, 88 S.E. 231, 231-32 (1916)). *See also Plummer v. Kearney*, 108 N.C. App. 310, 312, 423 S.E.2d 526, 528 (1992) ("An order is not final, and therefore interlocutory, if it fails to determine the entire controversy between all the parties."). Since the 20 March 2002 decision was not a final judgment on the merits, but rather an interlocutory decision, the doctrine of *res judicata* does not apply.

The Commission has the ability to modify its interlocutory decisions prior to rendering a final decision on the merits. As our Supreme Court observed in *Russ*, "[a]n interlocutory order or judgment differs from a final judgment in that an interlocutory order or judgment is subject to change by the court during the pendency of the

action to meet the exigencies of the case." *Russ v. Woodard*, 232 N.C. 36, 41, 59 S.E.2d 351, 355 (1950) (internal quotation marks omitted). *See also Welch v. Kingsland*, 89 N.C. 179, 181 (1883) ("We think authority to vacate or modify previous orders ascertained to be erroneous or wrong, when discovered during the progress of the cause and before final judgment, does reside in the court, and on proper occasions should be exercised to promote the ends of justice."). The Commission was, therefore, free to revisit its 20 March 2002 decision prior to filing a final opinion and award on the merits.

Defendants point to *Weston v. Sears Roebuck & Co.*, 65 N.C. App. 309, 309 S.E.2d 273 (1983), *disc. review denied*, 311 N.C. 407, 319 S.E.2d 281 (1984), in which this Court held:

> By order of the full Commission, the initial hearing was limited to defendant's motion to dismiss for lack of jurisdiction. Given the limited scope of the hearing, it was patently improper for the deputy commissioner to find and conclude that plaintiff had suffered an injury arising from his employment with defendant. It was similarly improper for the full Commission, on appeal from the Opinion and Award of the deputy commissioner, to find and conclude that plaintiff had a compensable injury, regardless of its ruling with respect to jurisdiction. To hold otherwise would deny both parties their rights under the law. We therefore express no opinion as to the substantive merits of plaintiff's claim but limit our opinion to the question of whether the Industrial Commission had jurisdiction to consider the claim.

*Id.* at 312, 309 S.E.2d at 275. The Court then proceeded to conclude that the Industrial Commission had no jurisdiction to consider the plaintiff's claim and that the defendant's motion to dismiss should have been granted. *Id.* at 315, 309 S.E.2d at 277. We read this opinion as holding in part that the Commission must first decide whether it has jurisdiction prior to reaching the merits. *See Bryant v. Hogarth*, 127 N.C. App. 79, 83, 488 S.E.2d 269, 271 ("Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy."), *disc. review denied*, 347 N.C. 396, 494 S.E.2d 406 (1997).

We also believe that the Court's reference to a denial of the rights of the parties concerned the lack of notice and opportunity to be heard. *See Allen v. K-Mart*, 137 N.C. App. 298, 304, 528 S.E.2d 60, 64 (2000) ("The opportunity to be heard . . . [is] tantamount to due process and basic to our justice system. . . . Therefore, we hold that

where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence."). The requirement of due process does not, however, mean that the Commission may not revisit its interlocutory decisions. Instead, the Commission must, prior to making its decision, ensure that the parties have notice that an issue may be reached and an opportunity to present evidence pertinent to that issue.

In this case, because of the Commission's interlocutory opinion and award remanding to the deputy commissioner, defendants had no notice that the Commission would be addressing a change of condition or plaintiff's inability to comply with the mandated work schedule until after the Commission filed its 6 April 2004 opinion and award. Defendants, therefore, had no opportunity to obtain and present medical evidence on those issues. The Commission then relied upon this lack of evidence when it found: "There is no medical evidence in the record that since December 1997 plaintiff was capable of returning to work in any employment or that working would improve her condition." Defendants justifiably contend that they "have now been penalized" by their adherence to the Commission's prior decisions. Accordingly, we reverse the Commission's decision and remand for further proceedings to allow the parties to present evidence on the questions whether plaintiff experienced a change of condition under N.C. Gen. Stat. § 97-47, whether plaintiff is capable of working in any employment, and whether working would improve plaintiff's condition.

[2] Since the issue may arise upon remand, we note that defendants have argued that the Commission erred in making its findings by relying upon the testimony of unauthorized physicians, but cite no authority in support of this position. The fact that a physician is not authorized by the Commission means that the employer and carrier cannot be required to pay for treatment by that physician. *See Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 627, 540 S.E.2d 785, 789-90 (2000) (Commission could deny claim for medical expenses if physician not approved by Commission). It does not render the physician's evidence incompetent. The Commission did not, therefore, err in relying upon the opinions of Drs. Poehling, Hansen, and McManus even though they were not authorized treating physicians of plaintiff.

[3] Defendants have also addressed in their brief the question of the compensability of plaintiff's upper extremity condition. The Com-

mission ruled in its 6 April 2004 opinion and award that (1) "[t]he findings and conclusions [in the 17 February 1999 opinion and award] that plaintiff's upper extremity complaints are not causally related to the compensable foot injury or to the tag room position are final and may not be relitigated," and (2) "[p]laintiff did not sustain an injury by accident or contract a compensable occupational disease involving her right upper extremity in I.C. No. 921804." Neither of these determinations has been appealed by plaintiff, and they are, therefore, the law of the case and may not be revisited on remand.

Reversed and remanded.

Judges TIMMONS-GOODSON and CALABRIA concur.