* * * * * * * * * * *
The Full Commission has reviewed the entire record consisting of the additional evidence taken by Deputy Commissioner Glenn, the briefs and oral arguments presented before the Full Commission on September 25, 2007, as well as the prior Full Commission Opinions and Awards *Page 2 
filed February 17, 1999, March 20, 2002, and April 6, 2004. Based upon all of the evidence of record, the Full Commission enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in the pre-trial agreement, as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk at the time of the alleged injury by accident was Reliance Insurance Company, now the North Carolina Insurance Guaranty Association.
4. All Industrial Commission forms, pleadings, deposition transcripts, hearing transcripts and Opinions and Awards are a part of the evidentiary record.
5. All plaintiff's medical records were admitted into evidence subject to the right of either party to depose the treating physician.
6. The parties agreed that the issues before the Commission are whether plaintiff experienced a change of condition pursuant to N.C. Gen. Stat. § 97-47; whether plaintiff is capable of working in any employment; and whether working would improve plaintiff's condition. Defendants submitted an additional issue of whether plaintiff's failure to return to work as advised by her doctor constituted a willful intent to injure herself and thereby bars her claim under N.C. Gen. Stat. § 97-12.
 * * * * * * * * * * * * *Page 3 
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as facts the following:
 FINDINGS OF FACT
1. On or about March 22, 1994, plaintiff suffered a compensable injury to her right foot as a result of an occupational disease. Defendants filed a Form 21 Agreement accepting the claim in I.C. No. 453005. The compensable right foot condition included a Morton's neuroma and diagnosis of complex regional pain syndrome (CRPS).
2. I.C. No. 453005 first came before the Full Commission on July 1, 1998, on plaintiff's appeal from an Opinion and Award by former Deputy Commissioner W. Bain Jones, Jr., filed December 31, 1997. In the first Full Commission Opinion and Award filed February 17, 1999, the Commission denied plaintiff's claim that the compensable CRPS extended into her right upper extremity and found that plaintiff unjustifiably refused to comply with her physicians' recommendations that she increase her level of activity, including her work hours, and that her condition worsened as a result of her refusal to comply. Plaintiff's indemnity and medical compensation was suspended as long as plaintiff's failure to comply with medical treatment continued. This decision was not appealed by either party and is final and binding on all parties in this action.
3. On April 5, 1999, plaintiff filed a Form 18 which asserted a worsening of her CRPS while working in the sorting tags/tag room position. Plaintiff stated that her disability started on November 6, 1997. This claim was assigned I.C. No. 921804.
4. Upon the filing of a Form 33, I.C. Nos. 453005 and 921804 were consolidated and heard before former Deputy Commissioner Richard Ford on December 15, 1999. On September 25, 2000, Deputy Commission Ford filed an Order in which he found that there was *Page 4 
no change of condition with respect to plaintiff's right foot, that plaintiff failed to comply with the order contained in the February 17, 1999 Full Commission Opinion and Award in I.C. No. 453005, and that plaintiff was entitled to an evidentiary hearing on the new claim in I.C. No. 921804.
5. On appeal, the Full Commission, in its second Opinion and Award filed March 20, 2002, agreed that plaintiff was entitled to an evidentiary hearing and remanded the case to a Deputy Commissioner for the purpose of receiving evidence including medical depositions. The Commission directed that the issues to be addressed at the evidentiary hearing were: (1) whether plaintiff complied with her physician's treatment plan and reasonably sought employment sufficient to remove the N.C. Gen. Stat. § 97-32 suspension of benefits; (2) whether plaintiff sustained a compensable injury to her right upper extremity in I.C. No. 921804 that was different from the condition for which compensation was previously sought and denied in I.C. No. 453005; and, if so, (3) what benefits, if any, plaintiff was entitled to receive.
6. Following an evidentiary hearing before Deputy Commissioner Ronnie Rowell, the parties took the depositions of Drs. Mark McManus, Gary Poehling and Hans Hansen, as well as physical therapist Debbie Craig. In the third Full Commission Opinion and Award filed April 6, 2004, the Full Commission found that plaintiff did not present evidence that she had made any effort to seek employment or to comply with the February 17, 1999 Full Commission Opinion and Award; that there was no new occupational disease or injury; and that the issue of the compensability of plaintiff's right upper extremity had previously been litigated, denied and not appealed and therefore was final and binding.
7. Further, in its April 6, 2004 Opinion and Award, the Full Commission found that the medical evidence of record in the deposition testimony of Drs. Poehling, Hansen and *Page 5 
McManus showed that plaintiff was not capable of work in any employment after December 18, 1997 due to the pain syndrome in both upper and lower extremities. Up until December 18, 1997, plaintiff continued to work for defendant-employer on a part-time basis, but had refused to increase her work hours as recommended by the physicians. As of December 18, 1997, Dr. Poehling believed plaintiff was not able to function in a competitive work place due to her level of pain and took her out of work based on the worsening of her pain syndrome and her lack of endurance and strength. Additionally, Dr. McManus explained that although it is typical for physicians to recommend in the early stages of CRPS that a patient continue to be active and perform work or the condition would deteriorate, in this case, plaintiff's condition worsened the more she worked. Drs. Poehling and McManus continued to treat plaintiff throughout 1998, 1999, 2000, 2001, and 2002, during which period plaintiff was unable to work in any employment. In 2002, Dr. McManus referred plaintiff to Dr. Hansen at the Pain Relief Center in Catawba County.
8. Based upon the medical evidence, the Full Commission found that as of December 18, 1997 and continuing plaintiff was unable to work in any employment due to the combined CRPS in her upper and lower extremities and that there was no evidence that working would improve her condition. The Full Commission further found that plaintiff sustained a change of condition in that she no longer had any wage earning capacity and was entitled to payment of compensation.
9. Defendants appealed the April 6, 2004 Opinion and Award to the North Carolina Court of Appeals. The Court of Appeals in Branch v.Carolina Shoe Company, 172 N.C. App. 511, 616 S.E.2d 378 (2005) held that the determination that plaintiff's right upper extremity CRPS was not causally related to the compensable foot injury was the law of the case and could *Page 6 
not be revisited on remand. Further, the Court found that the March 20, 2002 Full Commission Opinion and Award was interlocutory and not binding. The Court of Appeals remanded the case to the Industrial Commission to take additional evidence concerning the following issues: "whether plaintiff sustained a change of condition under N.C. Gen. Stat. § 97-47, whether plaintiff is capable of working in any employment, and whether working would improve plaintiff's condition." Id. at ___,616 S.E.2d at 384.
10. In accordance with the directives of the Court of Appeals, by Order filed October 28, 2005, the Full Commission remanded the case to a Deputy Commissioner for the taking of additional evidence. Deputy Commissioner George T. Glenn, II, conducted a hearing in Morganton on March 24, 2006. Upon completion of the submission of the additional evidence, the parties submitted supplemental briefs and the case was heard before the Full Commission on September 25, 2007.
11. Defendants argue, and the Full Commission agreed with this argument in prior Opinions and Awards, that plaintiff's own actions by refusing to return to work and by failing to comply with recommended medical treatment caused the worsening of her CRPS. The March 20, 2002 Full Commission Opinion and Award authored by former Commissioner Riggsbee stated in Conclusion of Law 3 that:
 [E]vidence that plaintiff's condition has changed, and particularly that it has gotten worse, does not purge the prior finding that plaintiff failed to accept suitable employment and thereby is not entitled to benefits under [N.C. Gen. Stat.] Section 97-32. Therefore, mere evidence that plaintiff's condition has worsened is not relevant to the issues before the Commission.
12. Upon remand from the Court of Appeals, Deputy Commissioner Glenn conducted an evidentiary hearing in which plaintiff, who was then 52 years old, testified that since she left defendant-employer, her condition has gotten progressively worse. Plaintiff does not believe that *Page 7 
she is able to work. Plaintiff typically has pain of 5-6 on a scale of 10, but three to four times a week she has periods of intolerable pain that last from 12-16 hours.
13. The deposition testimony of Drs. Andrea Stutesman and Hans Hansen was also taken after Deputy Commissioner Glenn's hearing. Dr. Hansen testified that throughout his treatment of plaintiff from 2002 and continuing in 2006, she was unable to work in any employment and that working would not have improved her condition. He also testified that plaintiff was compliant with medical treatment. Dr. Hansen responded as follows to defense counsel's questions concerning the necessity of keeping plaintiff active:
 I]t depends on who has the disease. If she's hurting to the point she can't participate, it's like asking somebody that's got a broken leg to walk across the room. You've got to ask reasonable things in a reasonable environment. I wasn't there early on. Anybody with CRPS does better with more in the beginning and aggressive therapy. . . .
Dr. Hansen further explained that if the disease is going to get better, this improvement usually happens relatively near the onset of the disease and that once a person goes beyond three or four years, the chances of the disease abating or improving are very slim. The longer the pain is present, the less likely it can be easily extinguished and chronic pain develops, as occurred in plaintiff's case. Dr. Hansen felt that plaintiff's condition would not decline or improve substantially in the future, and that she will always be impaired by chronic pain.
14. At her deposition on June 14, 2006, Dr. Stutesman admitted that she had not seen or treated plaintiff since September 16, 1997 and had no knowledge of plaintiff's current condition. Therefore, the Full Commission gives greater weight to the expert opinions of Dr. Hansen than to those of Dr. Stutesman.
15. Although plaintiff's initial refusal to increase her work hours may have been unjustified, the greater weight of the medical evidence of record shows that since December 18, *Page 8 
1997 plaintiff has not been capable of returning to work in any employment and that working would not have improved her condition. Further, the greater weight of the evidence fails to show that plaintiff's refusal to work the hours recommended by her physicians constituted a willful intent to injure herself, which would bar plaintiff's claim under N.C. Gen. Stat. § 97-12.
16. Plaintiff has previously been awarded 20% permanent partial disability compensation for the impairment to her left foot. It is unclear from the record whether this compensation has already been paid to plaintiff.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals and based upon the findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The February 17, 1999 Opinion and Award is final and is binding on the parties. N.C. Gen. Stat. § 97-86; Hall v. Chevrolet Co., 263 N.C. 569,139 S.E.2d 857 (1965); Grantham v. R.G. Barry Corp., 127 N.C. App. 529,491 S.E.2d 678 (1997), disc. rev. denied, 347 N.C. 671, 500 S.E.2d 86
(1998). The findings and conclusions that plaintiff's upper extremity complaints are not causally related to the compensable foot injury or to the tag room position are final and may not be relitigated.
2. Plaintiff did not sustain an injury by accident or contract a compensable occupational disease involving her right upper extremity in I.C. No. 921804. N.C. Gen. Stat. §§ 97-2(6); 97-53(13).
3. Defendants argue that plaintiff should be held to comply with the February 17, 1999 Opinion and Award to increase her work schedule until she begins working an eight-hour day and that plaintiff's non-compliance is the reason her condition worsened. Defendants further *Page 9 
contend that plaintiff's refusal to work the hours recommended by her physicians constituted a willful intent to injure herself, which bars plaintiff's claim under N.C. Gen. Stat. § 97-12.
4. In this case, the parties entered into a Form 21 Agreement for Compensation which entitles plaintiff to a presumption of continuing disability. Kisiah v. W.R. Kisiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. review denied, 345 N.C. 343, 483 S.E.2d 169
(1997). In addition, plaintiff is entitled to lifetime medical compensation for her admittedly compensable injury pursuant to Hyler v.GTE Prods. Co., 333 N.C. 258, 425 S.E.2d 698 (1993). Nevertheless, defendants have not paid plaintiff indemnity or medical compensation for over 10 years based upon Commission decisions authorizing suspension of benefits for plaintiff's failure to comply with the physicians' orders to increase her work hours. Even though in 1997 plaintiff was continuing to work part-time for defendant-employer, her entire benefits were suspended based solely on her non-compliance with medical recommendations. Defendants appear to argue that the only way plaintiff's compensation can be reinstated is for her to comply with the increased work hours and cease her refusal to comply with medical treatment.
5. "Refusal" as used in the workers' compensation statutes connotes a willful or intentional act. Johnson v. Jones Group, Inc.,123 N.C. App. 219, 472 S.E.2d 587 (1996). The Court of Appeals inWatkins v. City of Asheville, 99 N.C. App. 302, 392 S.E.2d 754, disc.review denied, 327 N.C. 488, 397 S.E.2d 238 (1990), "set forth a `reasonableness' test to the decision of whether to deny benefits to a claimant refusing treatment, i.e., an analysis of whether a reasonable person who is motivated to improve his or her health would accept *Page 10 
the proffered treatment." Johnson v. Jones Group, Inc., at 225,472 S.E.2d at 590. If the Commission finds that the claimant willfully refused treatment, then the Commission must further determine whether the circumstances justified the refusal such that a reasonable person might have declined the proffered treatment. Id. at 226, 472 S.E.2d at 591. Plaintiff's refusal to increase her work hours, as least after December 18, 1997, was based upon the extent of her pain and the recommendations of Drs. Poehling and McManus taking her completely out of work. Therefore, plaintiff's refusal to comply with the doctors' recommendations after December 18, 1997 was reasonable in light of the particular circumstances involved in this case.
6. As of December 18, 1997, plaintiff sustained a change of condition in her left lower extremity such that she was no longer capable of work in any employment after that date, due to the combination of CRPS in both upper and lower extremities. N.C. Gen. Stat. § 97-47; Harrell v. Harriet Henderson Yarns, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985). No medical evidence was presented to apportion the extent of disability between the compensable lower extremity pain syndrome and the non-compensable upper extremity condition. Id. Therefore, plaintiff is entitled to a resumption of total disability compensation after December 18, 1997 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29. In the event that plaintiff has already been paid compensation for the permanent functional impairment to her foot, defendants are entitled to a credit for this compensation against the ongoing compensation awarded herein.
7. Plaintiff's refusal to work the hours recommended by her physicians did not constitute a willful intent to injure herself and therefore plaintiff's claim is not barred pursuant to N.C. Gen. Stat. § 97-12.
8. Plaintiff is entitled to payment by defendants of authorized medical treatment related to the compensable right foot condition. N.C. Gen. Stat. § 97-25. In the February 17, 1999 Opinion and Award, Dr. Poehling, while a noted, competent physician, specifically was not approved as one of plaintiff's treating physicians. Despite the Commission disapproval of Dr. *Page 11 
Poehling, plaintiff continued to be treated by Dr. Poehling. Plaintiff also was treated by Drs. McManus and Hansen who were not authorized by the insurer or the Commission. Therefore, plaintiff is not entitled to payment by defendants of the past medical treatment provided by these physicians. N.C. Gen. Stat. § 97-25.
9. A Commission nurse should be assigned to manage plaintiff's treatment, to assist the parties in the designation of an authorized treating physician(s), and to schedule a vocational assessment if still recommended by Dr. Hansen.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals and based upon the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall resume payment of total disability compensation to plaintiff at the rate of $298.68 per week beginning December 18, 1997 and continuing until further Order of the Commission. This amount is subject to the attorney's fee awarded below and a credit for any permanent partial disability compensation already paid plaintiff. Any accrued compensation shall be paid in a lump sum.
2. Defendants shall pay for medical treatment by authorized physicians that is related to the compensable right foot condition. A Commission nurse is HEREBY ASSIGNED to assist in the medical case management as stated in Conclusion of Law Number 5. Plaintiff is hereby ORDERED to comply with the medical treatment and to cooperate with the Commission nurse. Defendants are not responsible for payment of the medical treatment provided to date by Drs. Poehling, McManus or Hansen. However, the parties may agree to continued treatment by *Page 12 
one or all of these physicians, and in that event, subsequent medical treatment related to the pain syndrome in plaintiff's right foot shall be provided by defendants.
3. A reasonable attorney's fee of 25% of the compensation awarded in Paragraph 1 above is approved for plaintiff's counsel. Of the accrued amount, 25% shall be deducted from plaintiff's compensation and paid directly to plaintiff's counsel. Thereafter, defendants shall pay every fourth compensation check to plaintiff's counsel.
4. Plaintiff's claim in I.C. No. 921804 is DENIED.
5. Defendants shall pay the costs due this Commission.
This the 2nd day of November, 2007.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ BUCK LATTIMORE COMMISSIONER
 S/______________________ DANNY LEE McDONALD COMMISSIONER