Fred **SANOZKY,** Plaintiff–Appellant,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, District Lodge 142 International Association of Machinists and Aerospace Workers, Defendants–Appellees,**

**James T. Varsel, in his capacity as Airline Coordinator (IAMAW); William O'Driscoll, in his capacity as President–Directing General Chairperson (District 142 IAMAW); John and Jane Does 1 through 5, Defendants.**

Docket No. 04–5127.

United States Court of Appeals, Second Circuit.

Argued: June 9, 2005.

Decided: July 20, 2005.

Terrence P. Buckley, Islandia, NY, for Plaintiff–Appellant.

Robert S. Clayman, Carmen R. Parcelli, Guerrieri, Edmond & Claymon, P.C., Washington, DC, for Defendants–Appellees.

Before: JACOBS, SACK, and RAGGI, Circuit Judges.

PER CURIAM.

Fred Sanozky, an airline mechanic, brought suit in the United States District Court for the Eastern District of New York alleging that his union had violated its duty of fair representation under the Railway Labor Act, 45 U.S.C. §§ 151–188. Sanozky contends that District 142 of the International Association of Machinists and Aerospace Workers ("IAMAW" or "the union") failed to adequately pursue his wrongful termination grievance against Trans World Airlines ("TWA"). The district court (Block, J.) granted summary judgment in favor of the union on the ground that Sanozky had failed to adduce evidence of arbitrariness, discrimination or bad faith on the part of the union. The district court awarded fees to the union and denied Sanozky's request for an extension of time to "renew and reargu[e] the summary judgment motion." We affirm.

I

On October 29, 1999, Sanozky was terminated after twenty-five years of employ-

ment at TWA. The IAMAW represented Sanozky through the initial grievance process. In the course of that process, IAMAW conveyed to Sanozky the offer of a four-day unpaid suspension in lieu of termination, but Sanozky declined.

IAMAW and Sanozky sought arbitration before the System Board of Adjustment. The initial arbitration date of October 4, 2000 was rescheduled when the arbitrator recused herself, and the arbitration was later cancelled. Sanozky sought the union's assistance in getting TWA to participate in arbitration, but (by Sanozky's account) the union was unresponsive.

Meanwhile, TWA was in bankruptcy. *See In re Trans World Airlines, et al.,* 261 B.R. 103 (Bankr.D.Del.2001). TWA maintained that, unless it reached an agreement to sell substantially all of its assets to American Airlines, TWA would be liquidated and all of its then-active employees would be unemployed. The union was negotiating with TWA in an effort to preserve the employment of active TWA employees after American Airlines took control of TWA. However, TWA represented that American had no interest in hiring non-active TWA employees (such as Sanozky) who were facing termination hearings under the collective bargaining agreement. In April 2004, TWA agreed that twenty-four of these termination hearings would be arbitrated as part of the terms of its bankruptcy disposition. IAMAW decided not to include Sanozky's case in the twenty-four arbitrations.

Sanozky had already been employed by American Airlines at this time (having concealed his firing by TWA). IAMAW recommended to Sanozky that he discontinue arbitration because he would risk discovery by American that he had been terminated by TWA and because there was little chance of any appreciable damages from a bankrupt entity. Sanozky, however, per-

severed. On September 6, 2001, TWA informed Sanozky that it was not going to proceed with arbitration and IAMAW told Sanozky that it could do nothing further to assist him with his termination grievance.

In November 2001, Sanozky, moved *pro se* in the bankruptcy court to compel arbitration. The bankruptcy court granted this motion. In January 2002, a settlement between Sanozky and TWA was entered as the final award before the System Board of Adjustment. The award converted Sanozky's discharge into an unpaid leave of absence, and directed Sanozky to apply to the bankruptcy court to determine any "rights, benefits and entitlements" afforded by his new status.

In May 2002, Sanozky moved in bankruptcy court to enforce the arbitration award. The court interpreted the arbitration award as requiring Sanozky to apply as a creditor for relief in the bankruptcy proceeding, but noted that the time for creditors to petition for relief had not yet begun. Sanozky asked that the funds to which he was entitled be set in escrow, but the court ruled that there was no basis in bankruptcy law for such escrow, particularly since Sanozky was an unsecured creditor and unsecured creditors were unlikely to obtain anything more than nominal recovery.

In September 2002, Sanozky, *pro se,* brought an action in the district court against his local union, the national affiliate, and several individual union officers in their official capacities. The district court construed Sanozky's claim as a hybrid claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the implied duty of fair representation under the National Labor Relations Act, 29 U.S.C. §§ 151–169. Because this case involves the airline industry, plaintiff's fair representation challenge arises under the Railway Labor Act rather than the Nation-

al Labor Relations Act. No matter. The same principles of analysis apply under both statutes. *See Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 240 (2d Cir.1984) (describing hybrid § 301/fair representation claim as "substantively identical" to claim under the RLA).

The district court granted the defendants' motion to dismiss on the pleadings as to the individual defendants. However, as to the local and national IAMAW defendants, the court held:

> Sanozky has alleged sufficient facts to survive IAMAW's motion. In sum, he allege[d] that the IAMAW's delay caused him to miss his window of opportunity to obtain a prompt arbitration and to collect on his monetary claims against TWA, and that the IAMAW's failure to assist him in the TWA bankruptcy proceedings reduced him to a *pro se* status to mine the internecine complexities of the bankruptcy laws in his effort to enforce his arbitration award. Given these allegations, at this early stage in the litigation, the Court cannot say that it appears beyond doubt that [Sanozky] can prove no set of facts in support of his claim which would entitle him to relief.

*Sanozky v. IAMAW,* No. 02–cv–5153, 2003 WL 21087483 at *5 (E.D.N.Y. May 14, 2003) (internal citations and quotations omitted; alterations in original).

Later, however, the local and national IAMAW prevailed .on a motion for summary judgment. The district court ruled that Sanozky had failed to put forward "evidence of arbitrariness, discrimination, or bad faith," and that, in the absence of evidence that "earlier actions to enforce his arbitration award would have yielded a more favorable result," Sanozky failed to make the necessary showing of causation of damages. The court granted IAMAW's motion, and expressly directed the Clerk

of court to assess costs against Sanozky pursuant to Fed.R.Civ.P. 54(d)(1). Sanozky did not object. Judgment was entered on June 22, 2004. On July 6, 2004, Sanozky wrote to the court requesting a 30–day extension in which to file .a motion to renew and reargue the summary judgment motion. This request was denied, and Sanozky appealed.

## II

This Court reviews the district court's grant of summary judgment *de novo. See Young v. County of Fulton,* 160 F.3d 899, 902 (2d Cir.1998). In doing so, this Court is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ To prevail on a hybrid § 301/duty of fair representation claim, Sanozky must demonstrate both (1) that TWA breached its collective bargaining agreement and (2) that IAMAW breached its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998) (internal citation omitted). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of

reasonableness as to be irrational." *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citation and quotation marks omitted). Sanozky must further establish that any damages he suffered were caused by the union's breach. *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir.1998).

The evidence here is entirely consistent with an effort by the union to advance Sanozky's interests without prejudicing the interests of its other members. The evidence presented by Sanozky simply cannot support the conclusion that the union's actions were unreasonable.

In *Carrion v. Enter. Ass'n*, 227 F.3d 29 (2d Cir.2000) (*per curiam*), this Court "held that a union's duty of fair representation includes the union's duty to enforce an arbitration award." *Id.* at 33. Often, a breach of the duty to enforce an arbitration award will establish a breach of the union's duty of fair representation. However, the failure to enforce an arbitration award must still be viewed in the overall test of whether such action was arbitrary, discriminatory or in bad faith.[1]

■ Here, the failure of the union to attempt to enforce Sanozky's arbitration award was not unreasonable in light of the circumstances. The IAMAW had a duty to represent the interests of numerous terminated TWA employees, all entitled to arbitration, in a situation in which the airline was willing to arbitrate with only a handful of them. Sanozky provides no evidence that he was excluded in an arbitrary or discriminatory manner or that

the union acted in bad faith by not advancing his complaint at the expense of someone else's. Moreover, the union had reasonable basis for belief that pursuing Sanozky's arbitration against TWA could jeopardize his employment with American Airlines and that recovery against the bankrupt TWA was unlikely. *See Barr v. United Parcel Serv.*, 868 F.2d 36, 44 (2d Cir.1989) (holding that "union's good faith, non-arbitrary failure to take an action that [was] unlikely to be advantageous does not subject it to liability for breach of its duty of fair representation").

Under certain labor statutes, union members are not able to pursue their own relief independent of the union. *See Carrion*, 227 F.3d at 34. Sanozky, however, had the ability to pursue arbitration and enforce his own arbitration award without the union's involvement. *See* Railway Labor Act, 45 U.S.C. § 153(p) (stating that individual can bring own grievance action). The union's need to exercise triage and the prospect that Sanozky's claim might be counter-productive demonstrate that the union's conduct was within a range of reasonable practices.

## III.

■ Sanozky's challenges to the district court's imposition of costs and the denial of his request for more time to file a motion to reargue also fail. We review both decisions for abuse of discretion. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir.1995) (decisions to award costs are reviewed for abuse of discretion); Fed. R.Civ.P. 6(b) (district court may, in its

1. We note also that the court in *Carrion* was determining whether a claim that the union failed to enforce an arbitration award was a hybrid § 301/duty of fair representation claim. That is, the court was determining how to characterize such claim for the purpose of determining the relevant statute of limitations. The court subsequently rejected the claim before it on timeliness grounds and did not reach the question of whether the failure to enforce the arbitration award was in fact a breach of the duty of fair representation in that case. *Id.* at 33–34.

discretion, grant an extension of time to perform an act under the Rules).

■ Rule 54(d)(1) provides for costs in favor of the prevailing party unless the court directs otherwise. Sanozky offered no argument before the district court as to why costs should not be awarded in his case. He cannot now challenge those costs for the first time on appeal. *See LoSacco*, 71 F.3d at 90, 92 (affirming costs against *pro se* plaintiff where court expressly ordered calculation of costs and plaintiff failed to object or contest that order).

As to Sanozky's request for an extension of time in filing his motion for reconsideration, such a request may be granted, in the district court's discretion, "for cause shown." Fed.R.Civ.P. 6(b). Sanozky offered no explanation as to why he had failed to file a timely motion for reconsideration under Fed.R.Civ.P. 59, nor did he offer any reason why he required additional time to prepare such a motion. Moreover, in light of the district court's sound analysis of the summary judgment motion, any such motion for reconsideration would likely have been futile.

For the foregoing reasons, the judgment of the district court is AFFIRMED.