PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TOMI WHITE BRYAN, individually
and on behalf of all others similarly
situated,

　　　　　　　*Plaintiff-Appellant,*

v.

BELLSOUTH COMMUNICATIONS,
INCORPORATED,

　　　　　　　*Defendant-Appellee.*

No. 06-1746

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., Senior District Judge.
(1:02-cv-00228-FWB)

Argued: March 15, 2007

Decided: July 3, 2007

Before TRAXLER, KING, and GREGORY, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge King and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Amiel J. Rossabi, FORMAN, ROSSABI, BLACK, P.A.,
Greensboro, North Carolina, for Appellant. Adam Howard Charnes,
KILPATRICK & STOCKTON, L.L.P., Winston-Salem, North Caro-
lina, for Appellee. **ON BRIEF:** William F. Patterson, Jr., FORMAN,

ROSSABI, BLACK, P.A., Greensboro, North Carolina; Michael G. Wimer, WIMER AND JOBE, Asheville, North Carolina, for Appellant. Ashley B. Watson, BELLSOUTH TELECOMMUNICATIONS, INCORPORATED, Atlanta, Georgia; James H. Kelly, Jr., Richard S. Gottlieb, James J. Hefferan, Jr., KILPATRICK & STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Tomi Bryan filed in North Carolina state court a putative class action against BellSouth Communications, Inc. After BellSouth removed the action to federal court, the district court rejected three of Bryan's claims on the merits, declined to exercise supplemental jurisdiction over the remaining claim, and remanded that claim to state court. On appeal, we held that the remanded claim was a federal claim that should have been dismissed on the merits as well. *See Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 432 (4th Cir. 2004) (*Bryan I*). Pursuant to our remand, the district court dismissed that claim and entered judgment for BellSouth. BellSouth then filed a motion in state court, arguing that the federal court's dismissal of the claim was entitled to *res judicata* effect and that the state court should dismiss Bryan's action. When the state court denied BellSouth's motion, BellSouth returned to federal court seeking an injunction of the state-court action. The district court granted BellSouth's request and issued an order enjoining further proceedings in state court. Bryan now appeals, arguing that the injunction violated the Anti-Injunction Act. For the reasons set forth below, we affirm.

I.

Interstate telecommunication providers are "required by law to contribute a portion of [their] revenues to the federal Universal Service Fund ("USF") to ensure affordable telecommunications services to rural and low-income areas, schools, hospitals, and the like." *Bryan I*, 377 F.3d at 425. BellSouth recovers its USF contribution from its customers by way of a line item on each bill for a "Federal Universal

Service Charge" ("FUSC"). BellSouth's FUSC is established in the tariff that it is required to file with the FCC. Before April 1, 2003, when the FCC prohibited the practice, BellSouth (and other telecommunications carriers) charged its customers more than their proportional share of BellSouth's USF contribution. *See id.* at 425-26.

Bryan initiated a putative class action against BellSouth in North Carolina state court. Bryan alleged that BellSouth's FUSC was excessive and that BellSouth violated North Carolina's Unfair Trade Practices Act by not disclosing to its customers certain information about the FUSC. BellSouth removed the action to federal court, arguing that Bryan's claims amounted to challenges to BellSouth's tariff and were therefore federal claims. Bryan thereafter filed a First Amended Complaint in federal court. The complaint alleged that BellSouth imposed an FUSC that exceeded its required contribution to the USF, that BellSouth did not disclose how it calculated the FUSC, and that BellSouth's use of the term "Federal Universal Service Charge" was misleading.

Bryan filed a motion to remand the complaint to state court, and BellSouth filed a Rule 12(b) motion to dismiss. BellSouth argued that all of Bryan's claims were barred by the "filed-rate doctrine" in that they challenged BellSouth's filed tariff. *See, e.g.*, *American Tel. & Tel. Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 222 (1998) (explaining that under the filed rate doctrine, "the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext." (internal quotation marks omitted)).

The district court concluded that removal was proper because Bryan presented a federal question by directly challenging the terms of a tariff in her allegations that BellSouth's FUSC was excessive. The district court then concluded that two of the three claims asserted in Bryan's complaint must be dismissed under the filed-rate doctrine, because those claims would have the effect of altering the rates set forth in BellSouth's tariff. The district court concluded that the remaining count, "Count A," was simply a state-law unfair trade practices claim. The district court declined to exercise supplemental jurisdiction over that claim and remanded it to state court. BellSouth appealed the district court's refusal to dismiss Count A under the

filed-rate doctrine; Bryan did not appeal the dismissal of the other counts.

On appeal, this court concluded that Count A also presented a federal question by challenging the tariff. Because the claim challenged the tariff, we concluded that Count A should have been dismissed under the filed-rate doctrine. We therefore vacated the district court's remand order and directed the district court to dismiss Count A. *See Bryan I*, 377 F.3d at 432. Bryan petitioned the Supreme Court for a writ of *certiorari*, which the Court denied. *See Bryan v. BellSouth Telecomms., Inc.*, 543 U.S. 1187 (2005). On remand, the district court denied Bryan's motion to file an amended complaint and dismissed Count A, entering final judgment in favor of BellSouth.

While BellSouth's appeal was pending, Count A, which had been remanded to state court by the district court, was proceeding in state court.[1] The parties engaged in various pre-trial proceedings, Bryan filed an amended complaint, and the North Carolina trial court eventually certified a class of BellSouth customers. The parties thereafter agreed to stay the state-court action.

After the Supreme Court denied Bryan's petition for *certiorari* in *Bryan I*, BellSouth filed a motion in state court seeking dismissal of Bryan's action. BellSouth argued that when this court vacated the district court's remand order, that rendered the remand order a nullity and deprived the state court of jurisdiction over the case. BellSouth also contended that the action should be dismissed on *res judicata* grounds and by virtue of the filed rate doctrine. The North Carolina court denied the motion to dismiss. BellSouth then returned to federal court seeking an injunction of the state-court proceedings under the All Writs Act. *See* 28 U.S.C.A. § 1651(a) (West 2006).

---

[1]A remand is effective when the district court mails a certified copy of the remand order to the state court, *see* 28 U.S.C.A. § 1447(c) (West 2006), or, if the remand is based on the lack of subject-matter jurisdiction or a defect in the removal process, when the remand order is entered, *see In re Lowe*, 102 F.3d 731, 734-36 (4th Cir. 1996). More than two months after the district court issued its order remanding the single claim to state court, and after the remand had been effectuated, BellSouth moved to stay the remand pending appeal. The district court denied that motion, and a panel of this court likewise denied BellSouth's motion to stay.

The district court granted BellSouth's request for an injunction. The court concluded that our prior decision vacating its remand order rendered the remand order a nullity and deprived the state court of jurisdiction over the case. Because the state court had no jurisdiction over the claim, the district court concluded that it was proper to issue an injunction barring further action on the case. It is from that order that Bryan now appeals.

## II.

Bryan first contends that the injunction must be vacated because the district court lacked subject matter jurisdiction. She claims that when the district court (after the first appeal) dismissed Count A with prejudice, the case was closed, and nothing remained over which the district court could exercise jurisdiction. Because the All Writs Act does not confer an independent basis for the court to exercise jurisdiction, Bryan contends that jurisdiction was lacking. We disagree.

As a general rule, courts have jurisdiction to enforce their own judgments. *See Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003). The district court clearly had subject matter jurisdiction when it issued the order finally dismissing Count A, and the district court retained jurisdiction to enforce that judgment. *See In re Mooney*, 730 F.2d 367, 374 (5th Cir. 1984) ("[N]o independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. The jurisdiction that the federal court had when it entered its original judgment is enough to support its issuance of an injunction."); *see also Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1013 (8th Cir. 2002) ("As long as the original lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction to remove any subsequent state law action to federal court for purposes of applying the All Writs Act."). Bryan's claim that the court lacked subject-matter jurisdiction must therefore fail.

## III.

We turn now to Bryan's challenges to the injunction issued by the district court under the All Writs Act. The All Writs Act provides that a court "may issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a). Use of the All Writs Act, however, is constrained by the Anti-Injunction Act, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283 (West 2006). The injunction entered in this case is thus improper unless it falls within the reach of one of the exceptions contained in the Anti-Injunction Act.[2]

The Act's exception for injunctions that are necessary to "protect or effectuate" a court's judgment has come to be known as the relitigation exception. *See In re Am. Honda Motor Co. Dealerships Relations Litig.*, 315 F.3d 417, 440 (4th Cir. 2003). "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). The exception thus permits a court "to enjoin state-court proceedings in order to protect the *res judicata* effects of federal judgments." *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 737 (4th Cir. 1990). An injunction may issue under the relitigation exception only if the claims or issues subject to the injunction have actually been decided by the federal court; the exception is inapplicable where an injunction is sought to prevent the litigation of claims or issues that *could have* been decided in the original action but were not. *See Chick Kam Choo*, 486 U.S. at 148; *LCS Servs., Inc. v. Hamrick*, 925 F.2d 745, 749 (4th Cir. 1991) ("[A] complainant seeking to avail himself of the relitigation exception to the [Anti-Injunction] statute must make a strong and unequivocal showing of relitigation of the same issues." (internal quotation marks omitted)).

---

[2]The injunction in this case is not directed to the North Carolina court itself, but instead prohibits further prosecution by Bryan and her agents and associates. The Anti-Injunction Act's prohibition against the enjoining of state proceedings, however, extends to injunctions against parties to the state-court litigation. *See In re Am. Honda Motor Co. Dealerships Relations Litigation*, 315 F.3d 417, 439 (4th Cir. 2003).

## A.

Bryan contends that the relitigation exception is inapplicable because the claim she is asserting in state court is not the same as Count A that was dismissed under the filed-rate doctrine by the district court. According to Bryan, the focus of each complaint was substantially different — whereas the federal complaint challenged the FUSC as excessive, challenged the terms of the tariff, and sought to impose a different FUSC, the state court complaint focuses on BellSouth's misrepresentations about the FUSC. Bryan thus contends that the claims are different, such that the relitigation exception to the Anti-Injunction Act does not apply. We disagree.

Contrary to Bryan's assertion, Bryan did *not* explicitly challenge BellSouth's tariff or seek to impose a different FUSC in Count A of her federal complaint. Instead, we concluded in *Bryan I* that Bryan's allegations in Count A had the *legal effect* of challenging or seeking to change the terms of BellSouth's tariff. Thus, the fact that Bryan in her state court complaint does not explicitly challenge BellSouth's tariff or seek to vary the terms of the tariff is not enough to establish that the state court complaint and Count A of the federal complaint involve different claims.

In her complaint in federal court, Bryan claimed that BellSouth's charging and collecting of the FUSC were unfair trade practices under North Carolina law. Bryan also alleged that BellSouth's failure to disclose how it calculates the FUSC or disclose that the FUSC includes administrative costs and profit amounted to unfair trade practices. In the state-court complaint, Bryan omitted any reference to BellSouth's charging or collecting of the FUSC as constituting an unfair trade practice, alleging instead that BellSouth's various failures to fully disclose the relevant aspects of its FUSC amounted to unfair trade practices. An examination of the basis for our opinion in *Bryan I* will demonstrate that these changes to the claim asserted in state court are not enough to render the relitigation exception inapplicable.

In *Bryan I*, we explained why Count A was barred by the filed-rate doctrine:

> BellSouth maintains that it does, asserting that, because Count A seeks damages, the court, were Bryan successful,

would be put in the position of effectively refunding a por-
tion of the FUSC to Bryan. In the circumstances presented,
we are constrained to agree.

In Count A, Bryan alleges that BellSouth's charging and
collecting of the FUSC and its failure to make certain dis-
closures in connection therewith constitute unfair or decep-
tive acts or practices under North Carolina General Statute
section 75-1.1. . . . Bryan's prayer for damages draws no
distinction between her separate counts. With no indication
to the contrary, we must view Part V as seeking monetary
damages for the acts alleged in Count A.

BellSouth asserts that the monetary remedy Bryan seeks
is "a refund of that portion of the FUSC that she considers
she was wrongfully induced to pay" and that, in seeking
such a remedy, Bryan runs afoul of the filed-rate doctrine.
In actuality, Bryan does not specify the nature of her dam-
ages in Count A. Nonetheless, BellSouth maintains that any
award of damages flowing from BellSouth to Bryan, no
matter how calculated, would violate the filed-rate doctrine
by refunding a portion of the FUSC to some consumers but
not to others and by requiring the court to determine a rea-
sonable rate. . . .

In our view, the Complaint — read in the light most
favorable to the plaintiff — nowhere purports to seek any
form of damages other than a refund of some portion of the
FUSC. And it pleads no facts that would put BellSouth on
notice that Bryan intends to seek damages resulting from
any injury other than paying the FUSC. In the "FACTS"
section of the Complaint, Bryan alleges only that she is a
BellSouth customer who was charged and paid the FUSC,
that Bell-South charged an FUSC that was excessive, that it
failed to disclose how the FUSC was calculated, and that its
use of the term "FUSC" was misleading.

*Bryan I*, 377 F.3d at 430-31. As this passage demonstrates, the nature
of the damages sought by Bryan was key to the filed-rate question.
We concluded that the complaint could only be understood as seeking

a refund of a portion of the FUSC. And because other BellSouth customers would not receive such a refund, Bryan's claim ran afoul of the filed-rate doctrine.

While Bryan in her state-court complaint omitted claims that the FUSC was excessive, nothing about the nature of her damages claim has changed. Her allegations in the damages section are the same as they were in the federal complaint,[3] and both complaints include numerous allegations about misrepresentations by BellSouth. Bryan alleges that BellSouth's FUSC charge was more than its contribution to the USF, and she alleges that she is entitled to damages. Just as with the federal complaint, there is nothing in Bryan's state court complaint that would put BellSouth on notice that Bryan intends to seek damages resulting from any injury other than the paying of the FUSC.

In *Bryan I*, we rejected Bryan's argument that it was possible for her to recover damages that did not amount to a refund of the FUSC:

> At argument, Bryan asserted that one could envision an award of damages that would not challenge the filed tariff. She posited that if BellSouth had fully disclosed all information pertaining to its FUSC, she might have chosen a different carrier that would have charged a lower FUSC, and therefore she would have been damaged in the amount of the difference between the two carriers' FUSCs. Such an award of damages, Bryan maintained, would not require the court to determine the reasonableness of BellSouth's FUSC and therefore would neither present a federal question nor be barred by the filed-rate doctrine. This example is purely hypothetical, however, and nothing in the Complaint suggests such an injury.

---

[3]In the federal complaint, Bryan alleged that "BellSouth's actions and omissions have been an actual, producing, direct and proximate cause of damages to Plaintiff and to BellSouth's other North Carolina customers in an amount exceeding $10,000." J.A. 20. The allegation in the state complaint is identical. *See* J.A. 64.

*Id.* at 431. Just as there were no allegations in the federal complaint to support this theory, there is nothing in the state-court complaint that would support this theory of liability. In fact, the state court's order certifying the class demonstrates that Bryan is *not* seeking damages under this theory of liability. The certification order discusses the "damage models" that Bryan identified in her interrogatory responses:

> Plaintiff has set forth two damage models which she believes would be appropriate. These are: (a) The total of all monthly FUSC amounts billed to Plaintiff and every other Class member, which total sum is then trebled [under the North Carolina Unfair Trade Practices Act]; and (b) The difference between (i) the total of all monthly FUSC amounts billed to Plaintiff and every other Class member and (ii) the total of the relevant contribution factor times (x) the interstate portion of charges for telecommunications service on each customer's bill for Plaintiff and every other Class member for every month that there was an FUSC billed. The "difference" is then trebled. *Plaintiff does not claim that she is entitled to recover the difference between the federal universal service fees charged by other local carriers and the amount of BellSouth's FUSC.* Another measure of damages may be the difference between the amount charged and the amount authorized by the FCC.

J.A. 78-79 (emphasis added).

As the allegations in her complaint and the certification order demonstrate, Bryan in her state-court action is seeking damages in the form of a refund of the FUSC paid by North Carolina BellSouth customers. The claim asserted in state court is therefore functionally identical to Count A of the federal action. Because Bryan in the state-court action is seeking to litigate the very claim that we have concluded must be dismissed under the filed-rate doctrine, the requirements for the relitigation exception to the Anti-Injunction Act are satisfied.

### B.

Although we have concluded that the requirements for application of the relitigation exception have been satisfied, that does not necessarily mean it would be proper to enjoin the state proceedings. As mentioned previously, BellSouth filed a motion to dismiss with the state trial court, arguing that the district court's order dismissing Count A under the filed-rate doctrine must be given *res judicata* effect and that the state-court action must therefore be dismissed. The trial court denied the motion.[4]

In cases where the state court has in a final order rejected the claim that the prior federal order must be given *res judicata* effect, the Full Faith and Credit Act requires federal courts to respect that state court order by refusing to enjoin the state proceedings. As the Supreme Court has explained, the Anti-Injunction Act does not create an exception to the requirements of the Full Faith and Credit Act:

> We believe that the Anti-Injunction Act and the Full Faith and Credit Act can be construed consistently, simply by limiting the relitigation exception of the Anti-Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue. Once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision.

*Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986).

In this case, the North Carolina court has rejected BellSouth's *res judicata* claim by denying its motion to dismiss. Under *Parsons Steel*, then, we must consider whether *that* decision (the decision of the North Carolina court) is itself entitled to *res judicata* effect under North Carolina law.

---

[4]BellSouth has appealed that order. As of the date of this opinion, the state appeals court has not issued an opinion.

Under North Carolina law, a claim is barred by *res judicata* if there is "(1) a *final judgment* on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Erler v. Aon Risks Servs., Inc. of the Carolinas*, 540 S.E.2d 65, 68 (N.C. Ct. App. 2000) (emphasis added). An order denying a Rule 12(b)(6) motion to dismiss is *not* a final order. *See O'Neill v. Southern Nat'l Bank*, 252 S.E.2d 231, 234 (N.C. Ct. App. 1979) (explaining that "the denial of a Rule 12(b)(6) motion to dismiss is not a final judgment or order"); *Allen v. Stone*, 588 S.E.2d 495, 497 (N.C. Ct. App. 2003) ("[T]he denial of a motion to dismiss pursuant to Rule 12(b)(6) merely continues the action in the trial court for further litigation.").

Thus, under North Carolina law, the state-court order in this case denying BellSouth's motion to dismiss is not a final order and is not entitled to *res judicata* effect. *See Branch v. Carolina Shoe Co.*, 616 S.E.2d 378, 383 (N.C. Ct. App. 2005 ) ("Since the 20 March 2002 decision was not a final judgment on the merits, but rather an interlocutory decision, the doctrine of *res judicata* does not apply."). Accordingly, the issuance of an injunction in this case is not barred by *Parsons Steel*.

### C.

As the analysis set forth above demonstrates, an injunction against further prosecution of Bryan's state-court action is consistent with the All Writs Act, the Anti-Injunction Act, and the Full Faith and Credit Clause. The district court in this case, however, did not follow this precise path.

When seeking an injunction against Bryan's continued prosecution of Count A in state court, BellSouth made two arguments: the state-court suit is barred by claim and issue preclusion, and the state-court proceedings became a "nullity" once this court vacated the district court's remand of Count A. The district court agreed with BellSouth on the nullity argument, and the court thus did not consider BellSouth's other argument.

BellSouth's contention that the state-court proceedings became a nullity after our decision in *Bryan I* goes along the following path.

The vacating of an order deprives the order of any effect. *See, e.g.*, *United States v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004) (explaining that vacate "means to render an act void; as, to vacate an entry of record, or a judgment" (internal quotation marks and alteration omitted)). Thus, when the district court's order remanding Count A was vacated on appeal, it was as if there were never an order remanding Count A to state court. And without a remand order, the state court lacked jurisdiction, because removal deprives a state court of jurisdiction and requires the state court to cease all actions in the case. *See, e.g.*, *National S.S. Co. v. Tugman*, 106 U.S. 118, 122 (1882) (explaining that once a case is removed to federal court, "the jurisdiction of the State Court absolutely ceased . . . [and] [t]he duty of the State Court was to proceed no further in the cause").

   BellSouth's nullity argument gives us pause. The North Carolina state courts quite clearly lost jurisdiction when BellSouth removed the case to federal court. However, it is just as clear that the state court regained jurisdiction when the district court remanded Count A to state court. *See* 28 U.S.C.A. § 1447(c) (West 2006) (providing that the state court may proceed with a case once the district court mails a certified copy of the remand order to the state court). While a vacated order generally has no effect, we are not as confident as BellSouth that our vacatur of the district court's remand order somehow retroactively deprived the state courts of jurisdiction that was returned to them by the district court.[5] After all, we did not conclude in *Bryan*

---

[5]BellSouth also bases its nullity argument in part on language from various cases suggesting that if a remand order is reversed, everything that happened in state court before the reversal would be for naught. *See, e.g.*, *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223, 1226 (7th Cir. 1991) ("Remands are effective immediately, so state courts may get back to work on the cases. An appellate order a year or more later may render this effort wasted . . . ."); *Sykes v. Texas Air Corp.*, 834 F.2d 488, 491 (5th Cir. 1987) ("Appellate review of remand orders . . . is necessarily inefficient because of its peculiar binary quality: Either the remand is affirmed, in which case the appeal itself was a waste because it had no effect on the on-going state case; or the remand is reversed, in which case progress made in the state court proceedings may be nullified and the parties forced to restart in federal court."). We find nothing in the language of these cases that supports BellSouth's view that the reversal of

*I* that federal courts had exclusive jurisdiction over Bryan's claim. Instead, the claim against BellSouth was one over which state and federal courts have concurrent jurisdiction, with the filed-rate doctrine providing the rule of decision in either forum. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 963 (1986) ("[T]he filed rate doctrine applies not only to the federal-court review . . . but also to decisions of state courts. In this application, the doctrine is not a rule of administrative law designed to ensure that federal courts respect the decisions of federal administrative agencies, but a matter of enforcing the Supremacy Clause.").

To say that when an order is vacated it is as if the order never existed is a convenient way of describing the effect of the vacatur. When the case has always been and will remain in a single court system, that shorthand description of the result quickly conveys to the parties that the vacatur of the decision returns the parties to their original positions, before the now-vacated order was issued. But when a case has moved from the federal to the state court system, significant issues of comity arise. To conclude that a decision by a federal appeals court vacating a federal district court judgment retroactively invalidates state court proceedings that up until the moment of vacatur were entirely lawful and proper would perhaps be giving the state court system less respect than it is due.

We need not, however, resolve this difficult issue. Although the district court enjoined the state proceedings in large part because it viewed those proceedings as having been a nullity, the injunction was proper, as outlined above, under the relitigation exception to the Anti-Injunction Act. *See Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 n.3 (4th Cir. 1994) ("We have consistently recognized that, even though we disagree with the reasoning of the district court, we may affirm the result on different grounds if fully supported by the record.").

---

a remand order retroactively deprives the state court of jurisdiction or renders any state court orders void *ab initio*. Instead, the cases seem to suggest only that the reversal of a remand order may result in the nullification of the proceedings in state court by virtue of the Supremacy Clause. *See* U.S. Const. art. VI cl. 2.

We recognize that the district court suggested that it would not have enjoined the state court proceedings had they not been void.[6] Because the decision to enjoin a state court proceeding under the All Writs Act is a discretionary one, *see, e.g.*, *In re March*, 988 F.2d 498, 500 (4th Cir. 1993), our disagreement with the manner in which the district court approached the question might, in another case, require us to remand to the district court for reconsideration of the issue. As discussed above, we concluded in *Bryan I* that, in light of the damages sought by Bryan, the filed-rate doctrine prevented the granting of any relief on Count A. In the state-court action, Bryan seeks precisely the same damages on a claim that is in all respects identical to the claim dismissed by this court. In our view, it would be an abuse of discretion to permit Bryan to continue to prosecute a claim that, as a matter of federal law, is invalid and cannot support the award of any damages. We therefore do not believe that, given the particular circumstances of this case, the district court's skepticism about the relitigation exception prevents us from affirming the court's decision to enjoin the state court proceedings.

## IV.

Accordingly, for the foregoing reasons, we hereby affirm the district court's decision to enjoin Bryan from further prosecuting the

---

[6]When addressing Bryan's argument that the state-court claim was not the same as the dismissed Count A, the district court stated:

> *Had this matter turned on the issue of preclusion, the court would have been inclined*, in an effort to avoid interfering with the "legitimate activities" of the state, *to deny BellSouth's request for injunctive relief*. Comity concerns for the activities of the state, however, are significantly lessened by the court's determination that those activities are null and without effect. Therefore, in this case, injunctive relief minimally offends notions of comity and federalism, while fulfilling the court's obligation to exercise its jurisdiction, vindicate its authority, and protect its judgments.

J.A. 152 (emphasis added and internal citations omitted). The relitigation exception, of course, does turn on questions of preclusion.

state court action.

*AFFIRMED*