08-4387-cv
Domnister v. Exclusive Ambulette, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

———————

August Term, 2008

(Argued:   Friday, July 17, 2009          Decided:   Friday, June 4, 2010)

Docket No. 08-4387-cv

———————————————

GENNADIY M. DOMNISTER, VLADSLAV SITNIKOV, VLADIMIR MICHENKO, EDUARD LERNER,
EDUARD MURKAMETDINOV, ALEUSANDR YULDASHEV, on behalf of themselves and others
similarly situated,

*Plaintiffs-Appellants,*

– v. –

EXCLUSIVE AMBULETTE, INC., doing business
as Exclusive Transportation Services, EXCLUSIVE TRANSPORTATION SERVICES, YMF LIMITED
LIABILITY CORP., SUSAN EDELMAN, MICHAEL EDELMAN, DAVID H. GREENBAUM,

*Defendants-Appellees.*

———————————————

Before: SACK and B.D. PARKER, *Circuit Judges,* and GOLDBERG, *Judge.*[*]

———————————————

Appeal from a judgment of the United States District Court for the Eastern District of
New York (Garaufis, *J.*) dismissing claims alleging discrimination on the basis of national
origin.  REVERSED.

ANTHONY C. OFODILE, Ofodile & Associates, P.C.,
Brooklyn, NY, *for Plaintiffs-Appellants.*

---

[*]  The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by
designation.

1

RICHARD M. HOWARD, Jonathan D. Farrell, Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, NY *for Defendants-Appellees.*

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiffs-appellants are Russian immigrants who allege that their former employer discriminated and retaliated against them based on their national origin. All are former employees of YMF Limited Liability Company, a Brooklyn, New York company, doing business as Exclusive Transportation Services ("ETS"), that is engaged in the business of transporting elderly persons. Def. R. 56.1 Statement ¶¶ 7, 12, 16, Doc. No. 46, *Domnister v. Exclusive Ambulette,* No. 03-cv-1666 (E.D.N.Y. Aug. 5, 2005). Defendant-appellee Exclusive Ambulette ("EA"), located in Far Rockaway, New York, engages in the same work, but most of its employees are American-born. Defendant-appellee Susan Edelman owns both companies (collectively the "Exclusive Defendants"). *Id.* ¶¶ 3, 9. The ETS and EA employees were covered by separate collective bargaining agreements with the Service Employees International Union, Local 455, AFL-CIO.

In a complaint filed in federal court on September 5, 2003, the Russian-born ETS employees alleged that, notwithstanding the separate collective agreements, ETS and EA were, in fact, the same company and the drivers did the same work, but that the EA agreement contained more favorable terms than ETS's agreement with its Russian workers, principally higher wages and a shorter work-week. Am. Compl. ¶ 27, Doc. No. 7, *Domnister v. Exclusive Ambulette,* No. 03-cv-1666 (E.D.N.Y. Sept. 5, 2003). The EA agreement contained a provision that it would "apply to all establishments now or hereafter owned, operated or controlled by"

2

EA. *Domnister v. Exclusive Ambulette,* No. 03-cv-1666, 2007 WL 4244151, at \*10 (E.D.N.Y. Nov. 29, 2007) ("*Domnister I*"). Appellants alleged that, by virtue of this provision, the EA agreement applied to them too, and therefore they were entitled to the same wages and benefits enjoyed by EA's American-born workers. The Russian-born drivers also claimed that after they challenged these discrepancies with their employer and the union, they were "terminated on pretextual reasons in retaliation for their Union activities and for seeking to have defendants' discriminatory practices stopped." Am. Compl. ¶¶ 30, 32, Doc. No. 7, *Domnister v. Exclusive Ambulette,* No. 03-cv-1666 (E.D.N.Y. Sept. 5, 2003).

Plaintiffs' federal complaint raised six claims: one claim alleging that their union failed to fairly represent them (Claim I), two claims of national origin discrimination under state law and city law (Claims III and V), two claims of retaliation under state law and city law (Claims IV and VI), and one claim of retaliation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et. seq.* (Claim II).

Exclusive moved for summary judgment, initially arguing that because plaintiffs' federal claims were, in essence, labor claims, they were preempted by the NLRA, and, consequently, the District Court lacked subject-matter jurisdiction. The District Court denied the motion in part and granted it in part. *Domnister I,* 2007 WL 4244151, at \*1. The court first found that it did have subject-matter jurisdiction because it concluded that plaintiffs' two claims of national origin discrimination (Claims III and V) were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.*, which provides for federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). The court reasoned that because plaintiffs

complained of differences between their agreement and that of EA's American-born employees, LMRA preemption was triggered. The Court therefore found that it had jurisdiction to consider the claims as "hybrid" LMRA claims even though they had been brought under state and city law. *See Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638,* 227 F.3d 29, 33 (2d Cir. 2000) ("[A] suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim."). On the other hand, the District Court agreed with the defendants that it lacked jurisdiction over Claim II (alleging retaliation under the NLRA), because that claim was plainly preempted by the NLRA itself, Section 8 of which grants exclusive jurisdiction over such claims to the National Labor Relations Board. *See* 29 U.S.C. § 158.

Nonetheless, after dismissing only Claim II for lack of jurisdiction, the District Court granted defendants summary judgment on the merits with respect to Claims I, III, and V. The Court found for defendants on the breach of fair representation claim (Claim I) because it concluded that plaintiffs had "failed to produce any evidence to the court regarding steps the Union could have taken, but did not, to attempt to have Plaintiffs covered by the more favorable terms of the EA 1998 CBA." *Domnister I,* 2007 WL 4244151, at *15. Because plaintiffs' "hybrid" LMRA claims (Claims III and V) also required a showing that the union had breached its duty of fair representation, the Court granted summary judgment on those two claims as well. *See Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) ("To prevail on a hybrid § 301/duty of fair representation claim, [a plaintiff] must demonstrate both (1) that [an employer] breached its collective bargaining agreement and (2) that [a union] breached its duty of fair representation.").

4

Once these four claims had been dismissed, the District Court declined to exercise pendent jurisdiction over plaintiffs' state-law and city-law retaliation claims (Claims IV and VI). The Court dismissed them without prejudice, and "referred" them to state court for adjudication. *Domnister I,* 2007 WL 4244151, at *1; *see WWBITV, Inc. v. Village of Rouses Point,* 589 F.3d 46, 52 (2d Cir. 2009) ("[G]iven the eventual dismissal of all of plaintiffs' federal claims, we find that the district court acted well within its discretion in declining to assert supplemental jurisdiction over plaintiffs' state-law claim.").

At this point the procedural posture of the litigation became more complicated. On December 6, 2007, well before the 28 days for filing a motion for reconsideration under Rule 59(e) had expired, the Exclusive Defendants moved for reconsideration, arguing that the District Court should have dismissed the retaliation claims (Claims IV and VI) *with* prejudice because those claims were preempted by the NLRA.

On December 27, 2007, before the District Court ruled on the motion for reconsideration, plaintiffs filed a new case in state court alleging national-origin discrimination claims (one under state law, one under city law) and retaliation claims (one under state law, one under city law). This state complaint -- whose eventual dismissal plaintiffs are now appealing -- contains no references to collective bargaining agreements. It alleges that "the American-born/non-Russian workers at Far Rockaway office are accorded better terms and conditions of employment for doing similar, if not less, work as plaintiffs do." Compl. ¶17. It lists the same specific disparities, such as higher pay and better hours, that plaintiffs' earlier federal complaint had attributed to the American-born workers' CBA. The state complaint, however, does not identify a CBA as the source of these disparities, and plaintiffs do not claim to be entitled to be covered

5

by the EA CBA, or any other collective agreement. Compl. ¶18. The state complaint also charges retaliation. It alleges that employees who "have protested the discrimination or questioned the corporation regarding the disparity in the terms and conditions of their employment . . . have been terminated for pretextual reasons in retaliation for their seeking to have defendants' discriminatory practices stopped." Compl. ¶19.

Defendants promptly removed the newly-filed state case to the District Court, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331, the LMRA, and the NLRA, arguing that all the claims asserted in the state-court complaint were preempted by federal law.

Subsequently, on May 28, 2008, the District Court granted defendants' motion for reconsideration in the federal lawsuit, and dismissed, this time *with* prejudice, plaintiffs' original city-law and state-law retaliation claims (Claims IV and VI). *Domnister v. Exclusive Ambulette,* No. 03-cv-1666, 2008 WL 2157115 (E.D.N.Y. May 21, 2008) (*Domnister II*). The Court concluded that these claims were preempted by the NLRA because they invoked a collective bargaining agreement, and that therefore dismissal was required by *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245 (1959). The District Court noted that it was compelled to address the preemption issue raised by the motion for reconsideration because preemption is a question of subject-matter jurisdiction that cannot be waived. *Domnister II,* 2008 WL 2157115, at *2 n1; *see Zhong v. Dep't of Justice,* 489 F.3d 126, 129 (2d Cir. 2007).

In its May 2008 opinion, the District Court noted that it had also reviewed plaintiffs' now-removed state-court complaint, and that "it appears that *Garmon* preemption applies with equal force to the claims asserted in that case." *Domnister II,* 2008 WL 2157115, at *4. Rather than dismiss the state complaint at that juncture, however, the District Court, "in an abundance

6

of caution," scheduled a conference with the parties to discuss the case. *Id.*

On July 31, 2008, the Court dismissed the newly removed state-court complaint. Memorandum & Order, Doc. No. 16, *Domnister v. Exclusive Ambulette,* No. 08-cv-0463 (E.D.N.Y. July 31, 2008) (*Domnister III*). The Court, noting that plaintiffs "offered no basis on which to distinguish" the removed state claims from the dismissed federal claims, concluded that "*Garmon* preemption applies to the [state] claims for the same reasons stated in the court's May 21, 2008" opinion. *Dominster III*, Slip. Op. at 2.

Plaintiffs-appellants then filed a notice of appeal from the District Court's July 31, 2008 judgment dismissing their removed state-court complaint. We consider that dismissal in this opinion.[1] Plaintiffs have not appealed the Court's other rulings.

**DISCUSSION**

Appellants' core contention is that the District Court lacked jurisdiction under 28 U.S.C. § 1331 because their complaint did not raise an issue of federal law. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). On its face, the complaint raises no issues of federal law.

In their notice of removal, defendants contended that the District Court nevertheless had jurisdiction under § 1331 to dismiss the complaint because plaintiffs' discrimination and

---

[1] On appeal, appellants contend that the District Court denied their "cross-motion for leave to amend [the] amended complaint." We see no record of any such motion to amend in the record. Because there was no amended complaint in 08-cv-0463, we must assume that plaintiffs made their motion in connection with 03-cv-1666, which did involve an amended complaint. Because 03-cv-1666 is not the case that plaintiffs have appealed, we cannot consider this argument. For the same reason, we cannot consider appellants' argument that the District Court lacked jurisdiction to entertain defendants' motion for reconsideration in 03-cv-1666.

retaliation claims were preempted by the LMRA and NLRA, respectively. "Because federal preemption is a defense to the plaintiff's suit and does not appear on the face of the complaint, a defendant generally may not remove an action on the basis of federal preemption." *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.,* 50 F.3d 144, 147 (2d Cir. 1995) (citing *Metropolitan,* 481 U.S. at 63). However, the Supreme Court has recognized a limited exception to this rule when Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character. *Id.*

Even assuming *arguendo* that the NLRA is subject to complete preemption,[2] we conclude that plaintiffs' state complaint does not present an issue of federal law. In its opinion, the District Court held that plaintiffs' state complaint was preempted based on *Garmon* for the same reasons the Court stated in its May 21, 2008 decision dismissing the retaliation claims alleged in plaintiffs' federal complaint. In that May 2008 opinion, the Court concluded that because plaintiffs' retaliation claims "invoke[d] a right purportedly provided for in a CBA," they "arguably" fell under Section 8 of the NLRA. *Domnister II,* 2008 WL 2157115, at *3. However, as we explain, unlike their earlier federal-court complaint, plaintiffs' state-court complaint -- at issue before us now -- neither invokes, nor substantially relies upon, any collective agreement, and therefore is *not* subject to *Garmon* preemption.

In *Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to [§] 7

---

[2] So-called "complete preemption" has only been found in limited circumstances*,* such as § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185; § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a); and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86. We have not ruled on whether the NLRA is subject to complete preemption. *Sullivan v. Am. Airlines, Inc.,* 424 F.3d 267, 272 (2d Cir. 2005) (finding that a defendant may not remove a case based on a preemption defense under the RLA, a statute similar to the NLRA in many respects).

or [§] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." 359 U.S. at 245. *Garmon* preemption presents an issue of law which we review *de novo. See Healthcare Ass'n of N.Y. State, Inc. v. Pataki,* 471 F.3d 87, 94 (2d Cir. 2006). We "begin by identifying whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of [the action]. Next, we must decide whether the controversy is identical to one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB." *Id.* at 96.

Broadly stated, sections 7 and 8 govern "concerted activities" and "unfair labor practices," respectively. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002). Section 7 protects workers' rights to engage in concerted activity,[3] while Section 8 makes it an unfair labor practice for an employer to violate the rights outlined in § 7 as well as "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony" about an unfair labor practice. 29 U.S.C. §§ 157, 158(a).

In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in "concerted protected activity." Concerted protected activity, as defined by Section 7, requires "that an employee's action be taken for

---

[3] Section 7 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment.

29 U.S.C. § 157.

purposes of collective bargaining or other mutual aid or protection." *NLRB v. City Disposal Sys. Inc.,* 465 U.S. 822, 830 (1984) (internal quotation marks omitted). Unlike plaintiffs' federal complaint, which alleged that plaintiffs had been retaliated against for complaining to their employer that they were being denied a right due to them under a collective-bargaining agreement, plaintiffs' state complaint does not allege that plaintiffs ever complained that they were being denied a collectively bargained-for right, or that they were acting in concert in any way. For the same reason, plaintiffs' state complaint, which mentions neither the existence of a contract nor a union, does not appear to be preempted by § 301 of the LMRA, which governs "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).

*Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987), is instructive. There, appellants alleged that respondents' state-law contract claims were preempted by § 301 of the LMRA because they were "substantially dependent upon interpretation of the collective-bargaining agreement" between appellants and respondents. 482 U.S. at 395. The Court, however, recognized that respondents' complaint, as written, alleged that petitioners had "entered into and breached *individual* employment contracts" with respondents, and did not "rely upon the collective agreement indirectly, nor . . address the relationship between the individual contracts and the collective agreement." *Id.* at 394-95. The Court held that even though respondents were "bargaining unit members" who "possessed substantial rights under the collective agreement" with petitioners, and therefore "could have brought suit under § 301," they ultimately were the "masters of the complaint" and "chose not to do so." *Id.* at 395. Accordingly, the Court held that respondents' complaint was not substantially dependent upon interpretation of the

10

collective-bargaining agreement, and thus was not preempted by the LMRA. *Id.*

Like the respondents in *Caterpillar*, appellants' state-court complaint raises only state-law and city-law claims, and does not rely upon or address (or even mention) any collective-bargaining agreement. Plaintiffs do not claim to be entitled to coverage under any agreement, or to have acted in concert in any fashion. Instead, the complaint alleges discrimination based on terms and conditions of employment, and retaliation for having complained of that unequal treatment. As written, there is no suggestion in plaintiffs' state-court complaint that a CBA or any concerted protected activity will play a role in the case. Simply put, appellants' complaint alleges plain vanilla employment discrimination. As "masters of the complaint," plaintiffs were entitled to construct their complaint in this fashion, regardless of the existence of collective agreements. Thus the complaint, as written, is not preempted by either the LMRA or the NLRA, and the District Court lacked removal jurisdiction based on preemption.[4]

Defendants nevertheless contend that the District Court had jurisdiction to dismiss plaintiffs' state complaint because plaintiffs' claims were barred by claim preclusion and issue preclusion. Indeed, it appears that the District Court, although it did not explicitly discuss either of these doctrines, may have intended to invoke one of them when it remarked: "Plaintiffs have offered no basis on which to distinguish the claims [raised in their state complaint] from the state-law claims the court considered in [the May 21, 2008] decision and instead raise the same

_____

[4] It seems possible that the employment discrimination claim that plaintiffs allege in their state complaint may, after discovery and further articulation before the state court, prove indeed to be contingent upon the CBA. If so, it would be up to the state court to consider whether the claims should be dismissed as preempted by the LMRA or NLRA. At this point, however, preemption has not been established and plaintiffs are entitled to proceed with their complaint under a theory of discrimination that does not implicate the LMRA or the NLRA.

arguments that the court considered and rejected there." *Domnister III,* Slip. Op. at 2.  On the other hand, issue and claim preclusion are doctrines that typically require a nuanced analysis that the District Court did not perform here.

In any event, contrary to defendants' contention, a district court must have subject-matter jurisdiction in order to dismiss a case based on either issue or claim preclusion. "The preclusion doctrines . . . are waiveable affirmative defenses." *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 398 (2d Cir. 2003).  As the Supreme Court held in *Rivet v. Regions Bank of Louisiana,* federal jurisdiction is a creature of statute, and because "Congress has not authorized removal based on a defense or anticipated defense federal in character," a party's assertion of claim preclusion cannot provide a federal court with removal jurisdiction.  522 U.S. 470, 472 (1998).  Accordingly, in a case raising no issues of federal law, "[t]he defense of claim preclusion . . . is properly made in the state proceeding." *Id.*  The Court's holding in *Rivet* applies with equal force to other affirmative defenses, including those based on issue preclusion or statute of limitations.[5]

The District Court therefore did not have jurisdiction to dismiss plaintiffs' state complaint based on defendants' affirmative defenses.  Still, appellees claim, the District Judge had jurisdiction to dismiss the case because he was "doing no more than enforcing his prior order."  Resp. Br. at 9.  They rely chiefly on *Bryan v. BellSouth Commc'ns,* 492 F.3d 231 (4th Cir. 2007), in which the Fourth Circuit held that a district court retained jurisdiction under the

_____

[5] Appellees assert that if plaintiffs' claims in their state complaint are considered distinct from their claims in the earlier federal complaint, those claims "would be time barred."  Resp. Br. 10-11.  The District Court never discussed this issue.  In any event, as with issues of preclusion, the determination of whether the statute of limitations has expired should be made by the state court where, as here, a district court lacks subject-matter jurisdiction.

12

All Writs Act, 28 U.S.C. § 1651, to order the dismissal of claims in state court that the district court had previously remanded. *Bryan* is distinguishable. In *Bryan,* after the district court initially remanded the state-law claims, the Fourth Circuit held that the remand was improper because the district court should have dismissed the claims on the merits. In *Bryan,* the state case that the court dismissed consisted of literally the same claims, in the same case, that it had previously remanded. Here, in contrast, we are dealing with a new case in state court, with different allegations. The District Court here could not have retained jurisdiction to dismiss claims distinct from those it had dismissed earlier.

Appellees urge that we cannot consider plaintiffs' complaint "in a vacuum, without reference to the prior decisions of" the District Court. Resp. Br. at 1. While there might be something to be gained in terms of efficiency by allowing the District Court to evaluate plaintiffs' state-court complaint in light of their earlier federal complaint, the federal courts are courts of limited jurisdiction. In order to remove a case to federal court, a defendant must show that the complaint, as pled, presents an issue of federal law. The state-court complaint whose dismissal we are reviewing here presents no such issue, and does not, as written, provide defendants with a preemption defense that might otherwise create removal jurisdiction. Accordingly, the District Court lacked jurisdiction over the complaint, and should not have dismissed it. The defendants are of course free to present the state courts with their arguments about preemption, preclusion, and the statute of limitations.

## CONCLUSION

For the foregoing reasons, we hereby VACATE the District Court's July 31, 2008 Order dismissing the complaint that plaintiffs filed in state court (District Court Docket No. 08-cv-0463), and REMAND to the District Court so that it can remand to state court.